UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONA PRICE,

        Plaintiff,

v.

SPECIALIZED SOLUTION SERVICES, LLC,
OWEN & JAMES, CO.,
A JEFFERSON ASSOCIATION LLC,
DION TREMAYNE JEFFERSON,
AMBER JENICA JEFFERSON,
ENNIS LAVERNE JEFFERSON,
GLOBAL MANAGEMENT ACQUISITION FIRM INC (GA),
GLOBAL MANAGEMENT ACQUISITION FIRM, INC. (NC),
BLACK JOCKEY COMPANY,
SERVICE GURUS CO.,
FAIRVIEW MEDIATION GROUP INC,
HARDY & ASSOCIATES INC.,
HOOD & THOMPSON ASSOCIATES INC,
LAMONT DARNELL COOPER JR.,
CASSANDRA CATHERINE COOPER,
JADA RASHAWN COOPER,
BENNY H. HARDY JR.,
WALTER D. HARGROVE,
LAMAR D. SNOW,
DEMETRIOUS EUGENE THOMPSON,
JAHAAN ABDUL MCDUFFIE,
DONALD ANTHONY SMILEY, and
RANNYA COBB, also known as RANNYA COBB-SMILEY,

        Defendants.

_____/

COMPLAINT

**I.**    **Introduction**

     1.     Defendants operate a large and unlawful credit identity theft and debt collection

1

ring, that obtains consumers' stolen personal and financial information, along with stolen and counterfeit consumer accounts, and uses that information to contact, intimidate, and falsely threaten consumers with prosecution, litigation and other adverse consequences, in efforts to extort the payment of money from their victims.

2.     The putative leader of the ring is defendant Lamont Darnell Cooper Jr., a convicted felon, and as detailed below, previously incarcerated for violent crimes committed in connection with drug trafficking, armed kidnapping, extortion, and debt collection, including binding one of his victims with duct tape and setting the man on fire. Mr. Cooper to this day has continued to threaten and menace those in his path. In the instant case, when plaintiff's attorney emailed a copy of this complaint to Mr. Cooper and others, demanding that they cease all direct communications with plaintiff and asking whether defendants have an attorney authorized to accept service of process in this lawsuit, Mr. Cooper responded by email to plaintiff's attorney, threatening: "It's only way to deal with scum bag pisses [sic] of shit like you! The hunter will become the hunted." A copy of the emails are attached to this complaint as Exhibit A.

3.     Plaintiff Mona Price brings this action for damages and other relief brought against the defendant debt collectors and credit identity thieves for unlawfully acquiring, using and selling plaintiff's stolen account and personal financial information to contact plaintiff and attempt to extort the payment of money from plaintiff through false and unlawful threats of litigation and prosecution, in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq.,* Michigan Regulation of Collection Practices Act ("MRCPA"), M.C.L.§ 445.251 *et seq.,* and Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq.,* and for invading plaintiff's

2

privacy.

4.      Defendants, along with other entities and individuals to be identified in discovery, are involved in a fraudulent and ongoing scheme whereby they have conspired to use false representations and threats to coerce the payment of money from consumers across the country who allegedly have failed to repay alleged loans. This scheme, and similar ones operated by seemingly countless entities located in and around Los Angeles, California, Jacksonville and Miami, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill, South Carolina, are based on the use of a script, sometimes known as "The Shakedown" or "The Shake," that falsely threatens the consumer with prosecution, litigation, and other adverse consequences, unless the consumer immediately makes a payment to the caller. Often times the perpetrators falsely inflate the amount of the alleged debt. Often times the consumer is falsely accused of having committed a crime. Often times the debt is time-barred.  Often times, the consumer's personal, financial and account information has been stolen, sold and resold to multiple parties, such that the caller does not own or otherwise have any right to collect any debt from the consumer. Often times, the loan has been repaid or otherwise previously resolved and there is no debt owed. Often times, the account and related, alleged debt are counterfeit. When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

5.      The use of these unlawful debt collection practices is epidemic. On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and

abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015**.**

6.      Even more recently, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016, *United States of America v. Alan Ceccarelli*, U.S. District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft.

7.      See also, *USA v. Okomba et al.,* U.S. District Court, Western District of North Carolina (Charlotte), Case No. 3:18-cr-00292-RJC-DSC, with defendant Laurence A. Sessum III, convicted in April 2019 of wire fraud, money laundering and other crimes, and sentenced to a term of imprisonment of eleven years and four months, for operating a debt collection scam in Charlotte, North Carolina that used the same unlawful tactics that are described in this complaint and bilked consumers out of more than $6.1 million.

8.      See also, newly filed *Federal Trade Commission v. National Landmark Logistics, LLC et al.*, U.S. District Court, District of South Carolina, Rock Hill Division, Case No. 0:20-cv-02592-JMC, filed July 13, 2020, which describes the same type of scam that is described in this complaint.

9.      The Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, makes it a felony to "knowingly transfer, possess, or use, without lawful authority, a means of identification

4

of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law . . . ." The act defines a "means of identification" to include an individual's "name, social security number, date of birth," and other information.

10.     Defendants have knowingly and unlawfully acquired, transferred, sold and shared among themselves and with others, plaintiff's stolen personal and financial information, in furtherance of their joint enterprise to contact and coerce the payment of money from plaintiff through false threats of litigation and prosecution, claiming money due on a fake debt, in violation of the FDCPA, DPPA and Michigan law

## II.     Jurisdiction

11.     This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. § 2724(a) (DPPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367.  Venue in this judicial district is proper because the pertinent events took place here.

## III.     Parties

12.     Plaintiff Mona Price is an adult, natural person residing in Kent County, Michigan. Ms. Price is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Ms. Price is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

13.     Defendant Specialized Solution Services, LLC ("SSS") is an active Georgia limited liability company, formed on or about July 2, 2012. On March 29, 2020, defendant Ennis Laverne Jefferson filed an annual report for SSS with the State of Georgia, stating the SSS "Principal Office Address" is 3341 Holly Hill Parkway, Ellenwood, Georgia 30294. The

registered agent for SSS is InCorp Services, Inc., 2000 Riveredge Parkway NW, Suite 885, Atlanta, Georgia 30328. SSS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. SSS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. SSS is a "debt collector" as the term is defined and used in the FDCPA. SSS is a "regulated person" as the term is defined and used in MRCPA.  Alternatively, SSS is a "collection agency" and "licensee" as the terms are defined and used in MOC.

14.     SSS directly and indirectly participated in the efforts to collect an alleged debt from plaintiff that are described in this complaint.

15.     Defendant Owen & James, Co. ("O&J") is an active Georgia corporation, incorporated January 21, 2020. The O&J Articles of Incorporation filed by defendant Dion Tremayne Jefferson state the O&J "Principal Office Address" is 3341 Holly Hill Parkway, Ellenwood, Georgia 30294. The registered agent for O&J is defendant Specialized Solution Services, LLC, 1750 Conley Trace, Conley, Georgia 30288. O&J uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. O&J regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. O&J is a "debt collector" as the term is defined and used in the FDCPA. O&J is a "regulated person" as the term is defined and used in MRCPA.  Alternatively, O&J is a "collection agency" and "licensee" as the terms are defined and used in MOC.

16.     O&J directly and indirectly participated in the efforts to collect an alleged debt from plaintiff that are described in this complaint.

17.     Defendant A Jefferson Association LLC ("AJA") is an active Georgia limited liability company, formed on or about May 24, 2020.  The AJA Articles of Organization filed by

6

defendant Amber Jenica Jefferson state the AJA "Principal Office Address" is 3341 Holly Hill

Parkway, Ellenwood, Georgia 30294. The registered agent for AJA is defendant Ennis Laverne

Jefferson, 1750 Conley Trace, Conley, Georgia 30288. AJA uses interstate commerce and the

mails in a business the principal purpose of which is the collection of debts. AJA regularly

collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or

due another. AJA is a "debt collector" as the term is defined and used in the FDCPA. AJA is a

"regulated person" as the term is defined and used in MRCPA.  Alternatively, AJA is a

"collection agency" and "licensee" as the terms are defined and used in MOC.

18.     AJA directly and indirectly participated in the efforts to collect an alleged debt

from plaintiff that are described in this complaint.

19.     Defendants Specialized Solution Services, LLC, Owen & James, Co., and

A Jefferson Association LLC are collectively referred to as the "Call Center Defendants" in this

complaint.

20.     Defendant Dion Tremayne Jefferson is a natural person, age 48, purportedly

residing at 3341 Holly Hill Parkway, Ellenwood, Georgia 30294. Mr. Jefferson is an owner,

officer, member, manager, employee and agent of the Call Center Defendants. Mr. Jefferson

sometimes uses telephone numbers 404-241-3832 and 770-309-1090, and email addresses

wnyr01@gmail.com and dionajefferson@yahoo.com, in connection with the operation of

defendants' credit identity theft and debt collection scam. Mr. Jefferson has an extensive criminal

record, mostly involving drug felonies in New York and Georgia. Mr. Jefferson uses interstate

commerce and the mails in a business the principal purpose of which is the collection of debts.

Mr. Jefferson regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another. Mr. Jefferson is a "debt collector" as the term is defined and

used in the FDCPA. Mr. Jefferson is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Jefferson is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

21.     Mr. Jefferson (a) created the collection policies and procedures used by the Call Center Defendants, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Call Center Defendants, (c) oversaw the application of the collection policies and procedures used by the Call Center Defendants, and their employees and agents, (d) drafted, created, approved and ratified the tactics, scripts and letters used by the Call Center Defendants, and their employees and agents to collect debts from consumers, including the tactics, scripts and letter that were used to attempt to collect an alleged debt from plaintiff as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by all defendants, and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by all defendants, and their employees and agents in attempts to collect an alleged debt from plaintiff as stated in this complaint.

22.     Mr. Jefferson directly and indirectly participated in the efforts to collect an alleged debt from plaintiff that are described in this complaint.

23.     Defendant Amber Jenica Jefferson, also known as Amber Jenica Pearl Jefferson, is a natural person, age 37, purportedly residing at 3341 Holly Hill Parkway, Ellenwood, Georgia 30294. Ms. Jefferson is an owner, officer, member, manager, employee and agent of the Call Center Defendants. Ms. Jefferson sometimes uses telephone numbers 404-241-3832 and 770-

309-1090, and email address amberaries83@gmail.com, in connection with the operation of

defendants' credit identity theft and debt collection scam. Ms. Jefferson uses interstate commerce

and the mails in a business the principal purpose of which is the collection of debts. Ms.

Jefferson regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another. Ms. Jefferson is a "debt collector" as the term is defined and

used in the FDCPA. Ms. Jefferson is a "regulated person" as the term is defined and used in the

MRCPA. Alternatively, Ms. Jefferson is a "collection agency" and "licensee" as the terms are

defined and used in the MOC.

24.     Defendant Amber Jenica Jefferson currently is licensed (No. 3113077) by the

State of Georgia to sell life insurance, through company appointments with Occidental Life

Insurance Company of North Carolina (issued 09/26/2019), and Lincoln Heritage Life Insurance

Company (issued 01/31/2017).

25.     Defendant Amber Jenica Jefferson (a) created the collection policies and

procedures used by the Call Center Defendants, and their employees and agents, in connection

with their common efforts to collect consumer debts, (b) managed or otherwise controlled the

daily collection operations of the Call Center Defendants, (c) oversaw the application of the

collection policies and procedures used by the Call Center Defendants, and their employees and

agents, (d) drafted, created, approved and ratified the tactics, scripts and letters used by the Call

Center Defendants, and their employees and agents to collect debts from consumers, including

the tactics, scripts and letter that were used to attempt to collect an alleged debt from plaintiff as

stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by

all defendants, and their employees and agents in connection with their common efforts to collect

consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful

debt collection practices used by all defendants, and their employees and agents in attempts to

collect an alleged debt from plaintiff as stated in this complaint.

26.     Defendant Amber Jenica Jefferson directly and indirectly participated in the

efforts to collect an alleged debt from plaintiff that are described in this complaint.

27.     Defendant Ennis Laverne Jefferson is a natural person, age 72, purportedly

residing at 1750 Conley Trace, Conley, Georgia 30288. Ms. Jefferson is an owner, officer,

member, manager, employee and agent of the Call Center Defendants. Ms. Jefferson sometimes

uses email addresses jefferson_ennis@yahoo.com and kitti3341@comcast.net in connection with

the operation of defendants' credit identity theft and debt collection scam. Ms. Jefferson uses

interstate commerce and the mails in a business the principal purpose of which is the collection

of debts. Ms. Jefferson regularly collects or attempts to collect, directly or indirectly, debts owed

or due or asserted to be owed or due another. Ms. Jefferson is a "debt collector" as the term is

defined and used in the FDCPA. Ms. Jefferson is a "regulated person" as the term is defined and

used in the MRCPA. Alternatively, Ms. Jefferson is a "collection agency" and  "licensee" as the

terms are defined and used in the MOC.

28.     Defendant Ennis Laverne Jefferson (a) created the collection policies and

procedures used by the Call Center Defendants, and their employees and agents, in connection

with their common efforts to collect consumer debts, (b) managed or otherwise controlled the

daily collection operations of the Call Center Defendants, (c) oversaw the application of the

collection policies and procedures used by the Call Center Defendants, and their employees and

agents, (d) drafted, created, approved and ratified the tactics, scripts and letters used by the Call

Center Defendants, and their employees and agents to collect debts from consumers, including the tactics, scripts and letter that were used to attempt to collect an alleged debt from plaintiff as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by all defendants, and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by all defendants, and their employees and agents in attempts to collect an alleged debt from plaintiff as stated in this complaint.

29.     Defendant Ennis Laverne Jefferson directly and indirectly participated in the efforts to collect an alleged debt from plaintiff that are described in this complaint.

30.     Defendants Specialized Solution Services, LLC, Owen & James, Co., A Jefferson Association LLC, Dion Tremayne Jefferson, Amber Jenica Jefferson and Ennis Laverne Jefferson, and their employees and agents, when operating their credit identity theft and debt collection scam, use multiple, unregistered aliases, in efforts to conceal their true identities and locations. Those aliases include: Refine Solutions; Refine Solutions 1; and Refine Solutions 1 Co.

31.     Defendants Specialized Solution Services, LLC, Owen & James, Co., A Jefferson Association LLC, Dion Tremayne Jefferson, Amber Jenica Jefferson and Ennis Laverne Jefferson, and their employees and agents, when operating their credit identity theft and debt collection scam, use multiple telephone numbers, including: 470-407-4025; 470-407-4029; 833-781-5239; 844-881-3606; and 866-378-2373 (fax).

32.     Defendants Specialized Solution Services, LLC, Owen & James, Co., A Jefferson Association LLC, Dion Tremayne Jefferson, Amber Jenica Jefferson and Ennis Laverne

Jefferson, and their employees and agents, when operating their credit identity theft and debt collection scam, use multiple addresses, in efforts to conceal their true identities and locations. Those addresses include: 2045 Mt. Zion Road, "Suite 328," Morrow, Georgia 30260, but the address is merely a private mailbox (No. 328) rented February 26, 2020, from The UPS Store No. 5389, by defendant Dion Tremayne Jefferson, 3341 Holly Hill Parkway, Ellenwood, Georgia 30294, 770-309-1090, wnyr01@gmail.com, receive mail in the name of Refine Solutions 1.

33.     On March 2, 2020, defendants anonymously registered through GoDaddy.com, LLC and Domains By Proxy, LLC, the internet domain www.refinesol.com. The domain links to an active website that describes "Refine Solutions 1 Co" as an "Account Receivables Management" firm doing business at 2045 Mt. Zion Road, #328, Morrow, Georgia 30260, telephone numbers 833-781-5239 and 844-881-3606, email info@refinesol.com. Telephone calls placed to telephone number 844-881-3606 during non-business hours are answered by a pre-recorded message that states: "Hi. You reached the voice mailbox of Global Management. I apologize that we are not available to answer your call right now, but if you would please leave your name, your phone number, and your case number and someone will return your phone call at our earliest convenience. Thank you so much and have a great day."

34.     Defendant Global Management Acquisition Firm Inc ("GMAF"), also known as "Global Management," is an active Georgia corporation, incorporated February 18, 2014. The GMAF Annual Registration filed June 5, 2019 with the State of Georgia states that the Principal Office Address for GMAF is 1911 Grayson Highway, "Suite 8-130," Grayson, Georgia 30017, but the address is merely a private mailbox (No. 130) rented by defendants Lamont Darnell Cooper Jr. and Cassandra Catherine Cooper from The UPS Store No. 4293. GMAF does

business at Fountain Square Business Center, 2140 McGee Road, Suite A3400, Snellville,

Georgia 30078. GMAF also does business at 6604 East WT Harris Boulevard, Suite C3,

Charlotte, North Carolina 28215. GMAF uses multiple telephone numbers, including 770-574-

4801, 770-881-8494, 770-881-8514, 844-651-8890, 877-373-9176 and 404-420-2119 (fax). The

current CEO and CFO of GMAF is defendant Benny H. Hardy Jr. The current Secretary of

GMAF is defendant Mark Hanson. The registered agent of GMAF is defendant Walter D.

Hargrove, 758 Simon Way, Lawrenceville, Georgia 30045. GMAF uses interstate commerce and

the mails in a business the principal purpose of which is the collection of debts. GMAF regularly

collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or

due another. GMAF is a "debt collector" as the term is defined and used in the FDCPA. GMAF

is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, GMAF is a

"collection agency" and "licensee" as the terms are defined and used in the MOC.

35.     On December 15, 2016, defendants registered through GoDaddy.com, LLC, the

internet domain www.globalmaf.com. In December 2019, the domain linked to a website that

described Global Management Acquisition Firm Inc, also known as "Global Management

Premier Client Servicing," as a debt collection agency, doing business at 1911 Grayson Highway,

"Suite 8-130," Grayson, Georgia 30017, telephone numbers 404-393-9361 (fax), 800-303-4145,

888-895-6355 and 912-330-6971. Defendants used the domain to communicate with their

victims, using multiple email addresses, including admin@globalmaf.com and

dsmiley@globalmaf.com.

36.     According to the Better Business Bureau, GMAF does business at 3295 River

Exchange Drive, Suite 552-109, Norcross, Georgia 30092. The BBB internet website contains

more than thirty detailed consumer complaints accusing GMAF of engaging in the same fraudulent scheme that is described in this complaint. The BBB give GMAF a "F" rating.

37.     GMAF and its employees and agents have used multiple, unregistered names in connection with defendants' credit identity theft and debt collection scam, including: Global Management; Global Management Premier Services; and Global Management Premier Client Servicing.

38.     Defendants, and their employees and agents own, control and use a Merchant Account established in the name of "Global Management," telephone number 877-373-9176, located in Georgia, to receive credit card and debit card payments that they extort from their victims. Money deposited in the Merchant Account is shared among and distributed to the defendants named in this lawsuit, their employees and agents, and perhaps others. The application that was filed by defendants with the Acquiring Bank to create the Merchant Account, as well as the related monthly account statements and other account records, will need to be obtained from the Acquiring Bank via subpoena in discovery, so that plaintiff can identify the other entities that receive distributions of money from the Merchant Account and are involved in defendants' debt collection scam.

39.     Defendants use of the described Merchant Account to receive credit card and debit card payments that defendants and their employees and agents extort from their victims violates the terms of the contract between defendants and the Acquiring Bank, and violates the terms of the contracts between defendants and Visa and MasterCard, and disqualifies defendants from having a Merchant Account.

40.     GMAF, through its employees and agents, directly and indirectly participated in

14

the unlawful acquisition, use, and sale of plaintiff's stolen, private, personal, financial and account information, as described in this complaint.

41.     GMAF, through its employees and agents, directly and indirectly participated in the efforts to collect an alleged debt from plaintiff as described in this complaint.

42.     Defendant Global Management Acquisition Firm, Inc ("GMAF-NC") is an active North Carolina corporation, incorporated July 17, 2019. According to the GMAF-NC articles of incorporation, the Principal Office Address for GMAF-NC is 6604 East WT Harris Boulevard, Suite C3, Charlotte, North Carolina 28215 and the principal office telephone number is 877-373-9176, which is the same telephone number for GMAF.  The President of GMAF-NC is defendant Jada Rashawn Cooper. The registered agent of GMAF-NC is Hapnel Financial Group, 4917 Albemarle Road, Suite 200, Charlotte, North Carolina 28205. GMAF-NC uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. GMAF-NC regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. GMAF-NC is a "debt collector" as the term is defined and used in the FDCPA. GMAF-NC is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, GMAF-NC is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

43.     On March 3, 2020, defendant Jada Rashawn Cooper filed with the Register of Deeds for Mecklenburg County, North Carolina (Instrument # 2020030158; B34336 - P112) an Assumed Business Name Certificate for defendant GMAF-NC to operate a "Collection Agency" using the assumed named "Global Bill Pay Dot Net." The document falsely states that the "street address of the principal place of business" is 7209 East WT Harris Boulevard, "Suite 310,"

15

Charlotte, North Carolina 28227, which is merely a private mailbox (No. 310) rented by defendants from The UPS Store No. 1089.

44.     On November 30, 2019, defendants anonymously registered through GoDaddy.com, LLC and Domains By Proxy, LLC, the internet domain www.globalbillpay.net. The domain links to an active website that describes GMAF-NC, doing business as "Global Bill Pay,"  as an "Account Receivables Management" firm, telephone number 844-822-7991, email address admin@globalbillpay.net, doing business at 8511 Davis Lake Parkway, "Suite C6-161," Charlotte, North Carolina 28269, but the address is merely a private mailbox rented by defendants from The UPS Store No. 5433.

45.     GMAF-NC, through its employees and agents, directly and indirectly participated in the unlawful acquisition, use, and sale of plaintiff's stolen, private, personal, financial and account information, as described in this complaint.

46.     GMAF-NC, through its employees and agents, directly and indirectly participated in the efforts to collect an alleged debt from plaintiff as described in this complaint.

47.     Defendant Black Jockey Company ("BJC") is an active Georgia corporation, incorporated March 29, 2016. The annual report for BJC filed August 13, 2020 with the State of Georgia falsely states that the Principal Office Address for BJC is 1911 Grayson Highway, "Suite 8-130," Grayson, Georgia 30017, which is merely a private mailbox (No. 130) rented by defendants Lamont Darnell Cooper Jr. and Cassandra Catherine Cooper from The UPS Store No. 4293. The CEO, CFO, and registered agent of BJC is Mr. Cooper. The Secretary of BJC is Ms. Cooper.  BJC uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. BJC regularly collects or attempts to collect, directly or

indirectly, debts owed or due or asserted to be owed or due another. BJC is a "debt collector" as the term is defined and used in the FDCPA. BJC is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, BJC is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

48.     BJC, through its employees and agents, directly and indirectly participated in the unlawful acquisition, use, and sale of plaintiff's stolen, private, personal, financial and account information, as described in this complaint.

49.     BJC, through its employees and agents, directly and indirectly participated in the efforts to collect an alleged debt from plaintiff as described in this complaint.

50.     Defendant Service Gurus Co. ("SGC") is an active Georgia corporation, incorporated September 30, 2019, and purportedly doing business at the Fountain Square Business Center, 2140 McGee Road, Suite A-1700, Snellville, Georgia 30078. The registered agent of SGC is defendant Lamont Darnell Cooper Jr. SGC uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. SGC regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. SGC is a "debt collector" as the term is defined and used in the FDCPA. SGC is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, SGC is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

51.     SGC, through its employees and agents, directly and indirectly participated in the unlawful acquisition, use, and sale of plaintiff's stolen, private, personal, financial and account information, as described in this complaint.

52.     SGC, through its employees and agents, directly and indirectly participated in the

efforts to collect an alleged debt from plaintiff as described in this complaint.

53.    Defendant Fairview Mediation Group Inc ("Fairview") is an active Georgia corporation, incorporated January 12, 2020, and purportedly doing business at the Fountain Square Business Center, 2140 McGee Road, Suite A3400, Snellville, Georgia 30078. The registered agent of Fairview is defendant Donald Anthony Smiley, 3162 Sloping Terrace, Snellville, Georgia 30078. Fairview uses multiple telephone numbers, including 844-881-3606 and 404-420-2119 (fax). Fairview uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Fairview regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Fairview is a "debt collector" as the term is defined and used in the FDCPA. Fairview is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Fairview is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

54.    On January 9, 2020, defendants, with defendant Black Jockey Company as registrant, registered through GoDaddy.com, LLC, the domain www.fairviewmediation.com. The domain links to an active website that describes Fairview Mediation as a debt collection agency, doing business at 2483 Heritage Village, "Suite 16-218," Snellville, Georgia 30078, which is merely a private mailbox (No. 218) rented from The UPS Store No. 1063. The website provides a telephone number 844-881-3606. Defendants use the domain to communicate with their victims, using multiple email addresses, including admin@fairviewmediation.com.

55.    On January 14, 2020, defendant Donald Anthony Smiley, 3162 Sloping Terrace, Snellville, Georgia 30078, signed a contract with The UPS Store No. 1063 to rent private mailbox No. 218, for use by "Fairview Mediation Group," doing business at the Fountain Square

Business Center, "2140 McGee Road, Snellville, Georgia 30078."  Mr. Smiley provided as

contact information: Email: dsmiley@globalmaf.com; and telephone numbers: 678-532-5038

and 770-880-1993.

56.    Fairview, through its employees and agents, directly and indirectly participated in

the unlawful acquisition, use, and sale of plaintiff's stolen, private, personal, financial and

account information, as described in this complaint.

57.    Fairview, through its employees and agents, directly and indirectly participated in

the efforts to collect an alleged debt from plaintiff as described in this complaint.

58.    Defendant Hardy & Associates Inc. ("H&A") is an active Georgia corporation,

incorporated April 16, 2019. The registered agent for H&A is defendant Benny H. Hardy Jr.,

4478 Hamby Pond Place NW, Acworth, Georgia 30102. H&A uses interstate commerce and the

mails in a business the principal purpose of which is the collection of debts. H&A regularly

collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or

due another. H&A is a "debt collector" as the term is defined and used in the FDCPA. HH&A is

a "regulated person" as the term is defined and used in the MRCPA. Alternatively, H&A is a

"collection agency" and "licensee" as the terms are defined and used in the MOC.

59.    H&A, through its employees and agents, directly and indirectly participated in

the unlawful acquisition, use, and sale of plaintiff's stolen, private, personal, financial and

account information, as described in this complaint.

60.    H&A, through its employees and agents, directly and indirectly participated in the

efforts to collect an alleged debt from plaintiff as described in this complaint.

61.    Defendant Hood & Thompson Associates Inc ("HTA") is an active North

Carolina corporation, incorporated May 10, 2012, purportedly doing business at 6604 East WT

Harris Boulevard, Suite C3, Charlotte, North Carolina 28215, telephone number 704-305-6204.

The HTA annual report filed August 22, 2019 states that HTA is in the business of "Debt

Management" and that Demetrious Eugene Thompson is the company's "Executive Officer."The

registered agent of HTA is Hapnel Financial Group, 4917 Albemarle Road, Suite 200, Charlotte,

North Carolina 28205. HTA uses interstate commerce and the mails in a business the principal

purpose of which is the collection of debts. HTA regularly collects or attempts to collect, directly

or indirectly, debts owed or due or asserted to be owed or due another. HTA is a "debt collector"

as the term is defined and used in the FDCPA. HTA is a "regulated person" as the term is defined

and used in the MRCPA. Alternatively, HTA is a "collection agency" and "licensee" as the terms

are defined and used in the MOC.

62.     On June 18, 2019, defendant Demetrious Eugene Thompson filed with the

Register of Deeds for Mecklenburg County, North Carolina (Instrument # 2019075261; B33597 -

P855) an Assumed Business Name Certificate for defendant HTA to operate a "Financial Risk

Management" business using the assumed named "Global Management Premier Services,"

located at 6604 East WT Harris Boulevard, Suite C3, Charlotte, North Carolina 28215, which is

the same office location for defendant GMAF-NC, doing business as "Global Bill Pay Dot Net."

from The UPS Store No. 1089.

63.     HTA, through its employees and agents, directly and indirectly participated in the

unlawful acquisition, use, and sale of plaintiff's stolen, private, personal, financial and account

information, as described in this complaint.

64.     HTA, through its employees and agents, directly and indirectly participated in the

20

efforts to collect an alleged debt from plaintiff as described in this complaint.

65.     Global Asset Management Acquisition Firm Inc (NY), Global Asset Management Acquisition Firm, Inc. (NC), Black Jockey Company, Service Gurus Co., Fairview Mediation Group Inc, Hardy & Associates Inc, and Hood & Thompson Associates Inc, are collectively referred to in this complaint as the "Corporate Defendants."

66.     Defendant Lamont Darnell Cooper Jr., also known as Darnell Cooper, also known as Darnell "Shepsu" Cooper, also known as Darnell "Turk" Cooper, is a natural person, age 48, purportedly residing at 826 Heritage Post Lane SW, Grayson, Georgia 30017. Mr. Cooper is a convicted felon and habitual criminal. Mr. Cooper uses multiple telephone numbers to operate his credit identity theft and debt collection scam, including 770-668-6415 and 912-330-6971. Mr. Cooper uses multiple email addresses to operate his credit identity theft and debt collection scam, including lamont@mynetworkstore.com and lamont@shepsufinancial.com. Mr. Cooper is an owner, officer, member, manager, employee and agent of defendants GMAF, GMAF-NC, BJC, SGC and Fairview. Mr. Cooper uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Cooper regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Cooper is a "debt collector" as the term is defined and used in the FDCPA. Mr. Cooper is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Cooper is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

67.     In October 1995, Lamont Darnell Cooper, a/k/a "Turk," was indicted for participating in a narcotics trafficking conspiracy operated by a gang in Buffalo, New York. *USA v. Castillo et al.,* Case No. 1:95-cr-00010-RJA-HKS-24. On May 21, 1997, Mr. Cooper pled

guilty to Conspiracy to Possess with Intent to Distribute Cocaine. On February 17, 1998, while awaiting sentence, Mr. Cooper participated in a violent armed kidnapping, According to the government, Mr. Cooper "abducted the victim at gunpoint, threatened to kill the victim unless certain ransom demands were met, and burned the victim while the victim was bound by duct tape and handcuffed." (Doc. 1434). On April 3, 1998, Mr. Cooper was sentenced for his drug trafficking to 43 months imprisonment, plus 5 years of supervised release. On September 22, 1998, Mr. Cooper pled guilty in Erie County Court to kidnapping in the second degree, and was sentenced to 7 years imprisonment.

68.     On October 16, 2009, the United States of America filed a Petition for Offender Under Supervision, charging Mr. Cooper with 8 violations of the terms and conditions of his supervised release, including violating the terms of a April 23, 2009 Civil Consent Order obtained by the New York State Attorney General's Office, directed at Mr. Cooper's continued ownership and participation in a debt collection business that had scammed consumers out of more than one million dollars using the same unlawful tactics that are described in this lawsuit.

69.     On February 5, 2010, Mr. Cooper was sentenced to an additional 14 months in prison for violating the terms of his supervised release, to be followed by 2 years of supervised release. The conditions of supervised release expressly ordered that Mr. Cooper "not engage, directly or indirectly, in any debt collection business," and that Mr. Cooper shall not associate with any person convicted of a felony."

70.     On September 13, 2012, an arrest warrant was issued for Mr. Cooper, based on allegations that Mr. Cooper had violated the terms of his supervised release by engaging in a debt collection business and by associating with a convicted felon, Benny H. Hardy Jr. On September

27, 2012, Mr. Cooper was arrested and again incarcerated.

71.     In late 2019, Mr. Cooper was interviewed by Panoramic Magazine, that published an article describing "Darnell 'Turk' Cooper" as a "self-made businessman [who has] experienced success in the debt collection industry." The article contains multiple quotes from Mr. Cooper, including:

  a) "I can honestly say that debt collection in Buffalo, NY has done more for the black community than any government program. Our influence stretches across the country."

  b) "My role models growing up were from G.Y.C. (Good Year Crew), a drug dealing crew from the East Side of Buffalo. I begin to apply business principles to my illegal activities after I dropped out of college."

  c) "[T]he best education of my life took place behind the barbed wire fences of McKean Federal Correctional Facility."

According to the article, "During this time [of incarceration] Darnell studied every discipline of business, and taught himself to the equivalent of an MBA."

72.     Mr. Cooper maintains an internet profile at www.facebook.com/lamont.cooper. On December 26, 2019, posted to his Facebook page: "What makes me a great business man cause I treat people fairly and I'm structured! My goal is to provide others the opportunity for success. Your success is my success. Charlotte's Top Collectors testify to my presence in that city." Included with the post were three video recordings of the "Global Management, First Annual Dinner & Gala." Seated at the head table were defendants Lamont Darnell Cooper, Lamar D. Snow, and (upon information and belief) Demetrious Eugene Thompson. The videos

contain speeches and remarks by multiple employees, who refer to Mr. Snow as part of

management and Mr. Thompson as a compliance officer at defendant Global Management

Acquisition Firm Inc.

73. Mr. Cooper maintains an internet profile related to his debt collection business at

www.facebook.com/mr-cooper-productions. On September 5, 2019, Mr. Cooper posted to his

Facebook page: "Debt collectors needed for new Buffalo, NY office. Great opportunity. Global

Management is looking for Top Collection Specialists. Contact Mr. Cooper @ (912) 330-6971

for more info."

74. From February 11, 2010 to the present, Mr. Cooper and defendant Cassandra C.

Cooper have rented a private mailbox, No. 130, from The UPS Store No. 4293, 1911 Grayson

Highway, Suite 8, Grayson, Georgia 30017. Mr. Cooper and Ms. Cooper have used private

mailbox No 130 to conceal their true location and receive mail for multiple entities, including:

Global Management Acquisition Firm Inc, Black Jockey Company, Service Gurus Co.,

Greenfield Enterprise, Inc., The UJAMAA Network Company, Lamont D. Cooper Inc., Shepsu

Financial Services, Inc, and Queen Cee Investments Inc.

75. Mr. Cooper also has operated his credit identity theft and debt collection scam

through the following entities:

    a)  Greenfield Enterprise, Inc., doing business as Greenfield Processing, a

        Georgia corporation, formed March 26, 2012, and claiming to be doing

        business at 3295 River Exchange Drive, Suite 552-109, Norcross, Georgia

        30092, telephone numbers 888-895-6355 and 912-330-6971, which are the

        same address and telephone numbers currently being used by defendant

GMAF.

b)      CAC Financial Enterprise, LLC, a Georgia limited liability company, formed April 17, 2008, claiming to be doing business at 2625 Piedmont Road NE, "Suite 56-284, Atlanta, Georgia 30324, which is merely a private mailbox rented from The UPS Store No. 1006.

c)      GSA Commercial Asset Management, Inc, a Georgia corporation, formed June 22, 2011, also claiming to be doing business at 2625 Piedmont Road NE, "Suite 56-284, Atlanta, Georgia 30324.

d)      National Asset Recovery Systems, LLC, a Georgia limited liability company, corporation, formed December 13, 2011, also claiming to be doing business at 2625 Piedmont Road NE, "Suite 56-284, Atlanta, Georgia 30324.

76.     Mr. Cooper (a) created the collection policies and procedures used by all defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of all defendants and their employees and agents, (c) oversaw the application of the collection policies and procedures used by all defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by all defendants and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by all defendants and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of,

approved, participated in, and ratified the unlawful debt collection practices used by all defendants and their employees and agents in attempts to collect an alleged debt from plaintiff as alleged in this complaint.

77.    Mr. Cooper directly and indirectly participated in the unlawful acquisition, use, and sale of plaintiff's stolen, private, personal, financial and account information, as described in this complaint.

78.    Mr. Cooper directly and indirectly participated in the efforts to collect an alleged debt from plaintiff as described in this complaint.

79.    Defendant Cassandra Catherine Cooper, also known as Cassandra Catherine Freeman, is a natural person, age 40, purportedly residing at 826 Heritage Post Lane SW, Grayson, Georgia 30017. Ms. Cooper is an owner, officer, member, manager, employee and agent of defendants GMAF, GMAF-NC, BJC, SGC and Fairview. Ms. Cooper uses multiple telephone numbers to operate her credit identity theft and debt collection scam, including 770-633-7230. Ms. Cooper uses multiple email addresses to operate her credit identity theft and debt collection scam, including 1cooper29@gmail.com. Ms. Cooper uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Cooper regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Cooper is a "debt collector" as the term is defined and used in the FDCPA. Ms. Cooper is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Ms. Cooper is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

80.    Defendant Cassandra Catherine Cooper currently is licensed (No. 3260619) by the

State of Georgia to sell property and casualty insurance, through company appointments issued April 19, 2019 with State Farm and Casualty Company and State Farm Automobile Insurance Company.

81.     Defendant Cassandra Catherine Cooper (a) created the collection policies and procedures used by all defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of all defendants and their employees and agents, (c) oversaw the application of the collection policies and procedures used by all defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by all defendants and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by all defendants and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by all defendants and their employees and agents in attempts to collect an alleged debt from plaintiff as alleged in this complaint.

82.     Defendant Cassandra Catherine Cooper directly and indirectly participated in the unlawful acquisition, use, and sale of plaintiff's stolen, private, personal, financial and account information, as described in this complaint.

83.     Defendant Cassandra Catherine Cooper directly and indirectly participated in the efforts to collect an alleged debt from plaintiff as described in this complaint.

84.     Defendant Jada Rashawn Cooper is a natural person, age 23, purportedly residing

at 7615 Metroliner Court, Charlotte, North Carolina 28213. Ms. Cooper also has resided at 2515 Old Steine Road, #1615, Charlotte, North Carolina 28269 and 10003 Lomax Ridge Drive, Charlotte, North Carolina 28216. Ms. Cooper is an owner, officer, member, manager, employee and agent of defendants GMAF, GMAF-NC, BJC, and Fairview. Ms. Cooper uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Cooper regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Cooper is a "debt collector" as the term is defined and used in the FDCPA. Ms. Cooper is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Ms. Cooper is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

85.    Defendant Jada Rashawn Cooper (a) created the collection policies and procedures used by all defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of all defendants and their employees and agents, (c) oversaw the application of the collection policies and procedures used by all defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by all defendants and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by all defendants and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by all defendants and their employees and agents in attempts to

collect an alleged debt from plaintiff as alleged in this complaint.

86.     Defendant Jada Rashawn Cooper directly and indirectly participated in the unlawful acquisition, use, and sale of plaintiff's stolen, private, personal, financial and account information, as described in this complaint.

87.     Defendant Jada Rashawn Cooper directly and indirectly participated in the efforts to collect an alleged debt from plaintiff as described in this complaint.

88.     Defendant Benny H. Hardy Jr., also known as BJ Hardy, is a natural person, age 49, purportedly residing at 2063 Leafmore Court, Grayson, Georgia 30017. Mr. Hardy also has resided at 4478 Hamby Pond Place NW, Acworth, Georgia 30102. Mr. Hardy is a convicted felon. Mr. Hardy is an owner, officer, member, manager, employee and agent of defendants GMAF, GMAF-NC, Fairview, and H&A. Mr. Hardy uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Hardy regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Hardy is a "debt collector" as the term is defined and used in the FDCPA. Mr. Hardy is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Hardy is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

89.     Mr. Hardy (a) created the collection policies and procedures used by all defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of all defendants and their employees and agents, (c) oversaw the application of the collection policies and procedures used by all defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by all defendants and their employees and

29

agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by all defendants and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by all defendants and their employees and agents in attempts to collect an alleged debt from plaintiff as alleged in this complaint.

90.     Mr. Hardy directly and indirectly participated in the unlawful acquisition, use, and sale of plaintiff's stolen, private, personal, financial and account information, as described in this complaint.

91.     Mr. Hardy directly and indirectly participated in the efforts to collect an alleged debt from plaintiff as described in this complaint.

92.     Defendant Walter D. Hargrove is a natural person, age 49, purportedly residing at 191 North Colonial Homes Circle NW, Atlanta, Georgia 30309 or 758 Simon Way, Lawrenceville, Georgia 30045. Mr. Hargrove is a convicted felon. Mr. Hargrove is an owner, officer, member, manager, employee and agent of defendants GMAF, GMAF-NC and Fairview. Mr. Hargrove uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Hargrove regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Hargrove is a "debt collector" as the term is defined and used in the FDCPA. Mr. Hargrove is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Hargrove is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

93.     Mr. Hargrove (a) created the collection policies and procedures used by all defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of all defendants and their employees and agents, (c) oversaw the application of the collection policies and procedures used by all defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by all defendants and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by all defendants and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by all defendants and their employees and agents in attempts to collect an alleged debt from plaintiff as alleged in this complaint.

94.     Mr. Hargrove directly and indirectly participated in the unlawful acquisition, use, and sale of plaintiff's stolen, private, personal, financial and account information, as described in this complaint.

95.     Mr. Hargrove directly and indirectly participated in the efforts to collect an alleged debt from plaintiff as described in this complaint.

96.     Defendant Lamar D. Snow is a natural person, age 46, purportedly residing at 3009 Estate View Court, Dacula, Georgia 30019 or 4621 Grand Central Parkway, Decatur, Georgia 30035. Mr. Snow is an owner, officer, member, manager, employee and agent of defendants GMAF, GMAF-NC and Fairview. Mr. Snow uses interstate commerce and the mails

in a business the principal purpose of which is the collection of debts. Mr. Snow regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Snow is a "debt collector" as the term is defined and used in the FDCPA. Mr. Snow is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Snow is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

97.     On October 23, 2017, the Federal Trade Commission filed a lawsuit in the United States District Court for the Northern District of Georgia, Atlanta Division, Case No. 1:17-cv-4192, against Mr. Snow, and others, alleging that the defendants had engaged in a massive credit identity theft and debt collection scheme in violation of the FDCPA and other laws, and cheated consumers out of millions of dollars. On July 17, 2018, the court entered judgment against Mr. Snow in the amount of $3,462,664.00, that included an order requiring Mr. McDuffie to transfer to the government, funds being held in multiple bank accounts established in the name of Global Processing Solutions LLC, Fountain Square Business Center, 2140 McGee Road, Snellville, Georgia 30078. The judgement also permanently barred Mr. Snow for life from engaging in debt collection as well as buying and selling debt. Mr. Snow has continued to ignore the bar.

98.     As stated in the FTC action, Mr. Snow operated his debt collection scheme through call centers at multiple locations, including the Fountain Square Business Center, 2140 McGee Road, Snellville, Georgia 30078, which is the same location from which the defendants named in this lawsuit currently operate one or more call centers.

99.     Mr. Snow (a) created the collection policies and procedures used by all defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of all defendants and

their employees and agents, (c) oversaw the application of the collection policies and procedures used by all defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by all defendants and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by all defendants and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by all defendants and their employees and agents in attempts to collect an alleged debt from plaintiff as alleged in this complaint.

100.   Mr. Snow directly and indirectly participated in the unlawful acquisition, use, and sale of plaintiff's stolen, private, personal, financial and account information, as described in this complaint.

101.   Mr. Snow directly and indirectly participated in the efforts to collect an alleged debt from plaintiff as described in this complaint.

102.   Defendant Demetrious Eugene Thompson is a natural person, age 50, purportedly residing at 2206 Water Oak Lane, Gastonia, North Carolina 28056. Mr. Thompson is an owner, officer, member, manager, employee and agent of defendants GMAF, GMAF-NC, Fairview, and HTA. Mr. Thompson uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Thompson regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Thompson is a "debt collector" as the term is defined and used in the FDCPA. Mr. Thompson is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Thompson is a

"collection agency" and  "licensee" as the terms are defined and used in the MOC.

103.    Mr. Thompson previously was a managing member, along with non-party Dion

Barron, of a North Carolina limited liability company named Thompson, Barron and Associates,

LLC,, through which Mr. Thompson attempted to collect debts from consumers using the

identical, unlawful practices that are described in this complaint. On August 21, 2017, the

Federal Trade Commission filed a lawsuit against Dion Barron and others in the United States

District Court for the Western District of North Carolina, Charlotte Division, *Federal Trade

Commission v. Lombardo, Daniels & Moss, LLC, Dion Barron and Charles R. Montgomery, III*,

Case No. 3:17-cv-503-RJC-DCK, alleging that the defendants had operated a scheme to defraud

consumers through the collection and processing of payments for debts that consumers did not

actually owe or that the defendants had no authority to collect, with multiple call centers and

numerous employees who used a variety of trade names, falsely claimed to be attorneys, and

falsely threatened consumers with litigation, garnishments, liens, arrest, prosecution, and other

adverse consequences to coerce the payment of money. On June 22, 2018, the Court entered

judgment against Mr. Barron in the amount of $1,814,045.00, and banned Mr. Barron for life

from engaging in any debt collection activity.

104.    Mr. Thompson (a) created the collection policies and procedures used by all

defendants and their employees and agents, in connection with their common efforts to collect

consumer debts, (b) managed or otherwise controlled the daily collection operations of all

defendants and their employees and agents, (c) oversaw the application of the collection policies

and procedures used by all defendants and their employees and agents, (d) drafted, created,

approved and ratified the tactics and scripts used by all defendants and their employees and

agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by all defendants and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by all defendants and their employees and agents in attempts to collect an alleged debt from plaintiff as alleged in this complaint.

105.    Mr. Thompson directly and indirectly participated in the unlawful acquisition, use, and sale of plaintiff's stolen, private, personal, financial and account information, as described in this complaint.

106.    Mr. Thompson directly and indirectly participated in the efforts to collect an alleged debt from plaintiff as described in this complaint.

107.    Defendant Jahaan Abdul McDuffie, also known as Jahaan Abdul Raheem McDuffie, is a natural person, age 48, purportedly residing at 71 Wild Oat Court, Grayson, Georgia 30017. Mr. McDuffie is a convicted felon. Mr. McDuffie is an owner, officer, member, manager, employee and agent of defendants GMAF, GMAF-NC and Fairview. Mr. McDuffie uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. McDuffie regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. McDuffie is a "debt collector" as the term is defined and used in the FDCPA. Mr. McDuffie is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. McDuffie is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

108.     On October 23, 2017, the Federal Trade Commission filed a lawsuit in the United

States District Court for the Northern District of Georgia, Atlanta Division, Case No. 1:17-cv-

4192, against Mr. McDuffie, and others, alleging that the defendants had engaged in a massive

credit identity theft and debt collection scheme in violation of the FDCPA and other laws, and

cheated consumers out of millions of dollars. On July 17, 2018, the court entered judgment

against Mr. McDuffie in the amount of $3,462,664.00, that included an order requiring Mr.

McDuffie to transfer to the government, funds being held in multiple bank accounts established

in the name of Sindi Investment Solutions LLC, Fountain Square Business Center, 2140 McGee

Road, Snellville, Georgia 30078. The judgement also permanently barred Mr. McDuffie for life

from engaging in debt collection as well as buying and selling debt. Mr. McDuffie has continued

to ignore the bar.

109.     As stated in the FTC action, Mr. McDuffie operated his debt collection scheme

through call centers at multiple locations, including the Fountain Square Business Center, 2140

McGee Road,  Snellville, Georgia 30078, which is the same location from which the defendants

named in this lawsuit currently operate one or more call centers.

110.     Mr. McDuffie (a) created the collection policies and procedures used by all

defendants and their employees and agents, in connection with their common efforts to collect

consumer debts, (b) managed or otherwise controlled the daily collection operations of all

defendants and their employees and agents, (c) oversaw the application of the collection policies

and procedures used by all defendants and their employees and agents, (d) drafted, created,

approved and ratified the tactics and scripts used by all defendants and their employees and

agents to collect debts from consumers, including the tactics and scripts that were used to attempt

to collect an alleged debt from plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by all defendants and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by all defendants and their employees and agents in attempts to collect an alleged debt from plaintiff as alleged in this complaint.

111.    Mr. McDuffie directly and indirectly participated in the unlawful acquisition, use, and sale of plaintiff's stolen, private, personal, financial and account information, as described in this complaint.

112.    Mr. McDuffie directly and indirectly participated in the efforts to collect an alleged debt from plaintiff as described in this complaint.

113.    Defendant Donald Anthony Smiley is a natural person, age 54. Mr. Smiley is a convicted felon and registered sex offender. According to the Georgia Bureau of Investigation, Sex Offender Registry, Mr. Smiley currently resides at 3162 Sloping Terrace, Snellville, Georgia 30078.  Mr. Smiley is an owner, officer, member, manager, employee and agent of defendants GMAF, GMAF-NC and Fairview. Mr. Smiley uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Smiley regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Smiley is a "debt collector" as the term is defined and used in the FDCPA. Mr. Smiley is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Smiley is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

114.    Mr. Smiley (a) created the collection policies and procedures used by all

37

defendants and their employees and agents, in connection with their common efforts to collect

consumer debts, (b) managed or otherwise controlled the daily collection operations of all

defendants and their employees and agents, (c) oversaw the application of the collection policies

and procedures used by all defendants and their employees and agents, (d) drafted, created,

approved and ratified the tactics and scripts used by all defendants and their employees and

agents to collect debts from consumers, including the tactics and scripts that were used to attempt

to collect an alleged debt from plaintiff as alleged in this complaint, (e) ratified the unlawful debt

collection practices and procedures used by all defendants and their employees and agents in

connection with their common efforts to collect consumer debts, and (f) had knowledge of,

approved, participated in, and ratified the unlawful debt collection practices used by all

defendants and their employees and agents in attempts to collect an alleged debt from plaintiff as

alleged in this complaint.

115.    Mr. Smiley directly and indirectly participated in the unlawful acquisition, use,

and sale of plaintiff's stolen, private, personal, financial and account information, as described in

this complaint.

116.    Mr. Smiley directly and indirectly participated in the efforts to collect an alleged

debt from plaintiff as described in this complaint.

117.    Defendant Rannya Cobb, also known as Rannya Cobb-Smiley, is a natural person,

age 62, purportedly residing at 3162 Sloping Terrace, Snellville, Georgia 30078.  Upon

information and belief, Ms. Cobb is the wife of defendant Donald Anthony Smiley. Ms. Cobb is

a manager, employee and agent of defendants GMAF, GMAF-NC and Fairview. Ms. Cobb uses

interstate commerce and the mails in a business the principal purpose of which is the collection

of debts. Ms. Cobb regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Cobb is a "debt collector" as the term is defined and used in the FDCPA. Ms. Cobb is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Ms. Cobb is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

118.    Ms. Cobb (a) created the collection policies and procedures used by all defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of all defendants and their employees and agents, (c) oversaw the application of the collection policies and procedures used by all defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by all defendants and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by all defendants and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by all defendants and their employees and agents in attempts to collect an alleged debt from plaintiff as alleged in this complaint.

119.    Ms. Cobb directly and indirectly participated in the unlawful acquisition, use, and sale of plaintiff's stolen, private, personal, financial and account information, as described in this complaint.

120.    Ms. Cobb directly and indirectly participated in the efforts to collect an alleged debt from plaintiff as described in this complaint.

121.    Defendants own, operate and control multiple debt collection call centers in and around Atlanta, Georgia, Charlotte, North Carolina and Buffalo, New York.

122.    On January 18, 2020, defendants ran an advertisement on www.Jocancy.com, stating that GMAF was looking to hire debt collectors to work in defendants' call center in the Fountain Square Business Center, Snellville, Georgia. The advertisement stated that GMAF uses a "Predictive & Broadcast Dialer" to contact consumers. The advertisement invited prospective employees to contact defendant Donald Anthony Smile at 678-532-5038.

123.    On April 7, 2019, defendants ran an advertisement on www.jobsearchi.com, stating that GMAF was looking to hire debt collectors to work in defendants' call center in Kenmore, New York. The advertisement stated that GMAF uses a "Predictive & Broadcast Dialer" to contact consumers. The advertisement invited prospective employees to contact defendant Lamont Darnell Cooper at 912-330-6971.

124.    On February 3, 2020, defendants ran an advertisement on www.craigslist.org, stating that defendant Fairview Mediation Group Inc was looking to hire debt collectors to work in defendants' call center in the Fountain Square Business Center, Snellville, Georgia. The advertisement stated that Fairview uses a "Predictive & Broadcast Dialer" to contact consumers. The advertisement invited prospective employees to contact "Doug McKenneth" at 678-532-5038.

125.    Defendants maintain an internet profile related to their debt collection business at https://www.facebook.com/fairviewprocessing. On February 8, 2020, Mr. Smiley posted to the Facebook page: "FairView Mediation Group is looking for Top Debt Collectors in Atlanta Ga with a proven track record and high integrity. The assignment will be to collect on a forward flow

40

of purchased files which consist out of Stat Credit Cards and Charged Off Retail." On September

5, 2019, posted to the Facebook page: "We all we got. Help me congratulate Team Smiley on

successfully completing my board room training class to become a successful mediator in civil

lawsuit cases. We are ready to change the game as they know it in our industry. LET'S GET

IT!!!" Also posted were photographs of multiple individuals who were purportedly trained by

Mr. Smiley and Ms. Cobb to work as part of defendants' credit identity theft and debt collection

scam.

126.    Defendants maintain multiple accounts with Vonage to operate their credit

identity theft and debt collection scam. Those accounts include the following:

| | | |
|---|---|---|
| a) | Account Number: | 295530 |
| | Account Name: | Processing Department |
| | Service Address: | 2140 McGee Road, Suite A3400 |
| | | Snellville, Georgia 30078 |
| | Start Date: | August 22, 2019 |
| | Billing Profile: | Lamont Darnell Cooper Jr. |
| | | 1911 Grayson Highway, Suite 8-130 |
| | | Grayson, Georgia 30017 |
| | Company Contact: | Donald Smiley |
| | | 2140 McGee Road, Suite A3400 |
| | | Snellville, Georgia 30078 |
| | | 678-532-5038 |
| | | smiley.don@yahoo.com |
| | | |
| b) | Account Number: | 288085 |
| | Account Name: | Evolution Asset Group |
| | Service Address: | 3575 Habersham at Northlake, Suite B |
| | | Tucker, Georgia 30084 |
| | Start Date: | July 1, 2019 |
| | Billing Profile: | Tonisa Micole Hodge |
| | | 4621 Grand Central Parkway |
| | | Decatur, Georgia 30035 |
| | | (residence of defendant Lamar D. Snow) |
| | Company Contact: | Tonisa Micole Hodge |
| | | 3575 Habersham at Northlake, Suite B |
| | | Tucker, Georgia 30084 |

                                        404-312-3541
                                        evolutionassetgrp@gmail.com

    c)     Account Number:    75744
             Account Name:      Greenfield Processing
             Service Address:    3525 Piedmont Road NE
                                Atlanta, Georgia 30305
             Start Date:          April 29, 2014
             Billing Profile:      Lamont Darnell Cooper Jr.
                                  1911 Grayson Highway, Suite 8-130
                                Grayson, Georgia 30017
             Company Contact:   Lamont Darnell Cooper Jr.
                                  3525 Piedmont Road NE
                                  Atlanta, Georgia 30305
                                  770-668-6415
                                  lamont@mynetworkstore.com

    d)     Account Number:    49631
             Account Name:      National Asset Recovery Systems
             Service Address:    3525 Piedmont Road NE, Suite 100
                                  Atlanta, Georgia 30305
             Start Date:          August 9, 2012
             Billing Profile:      Cassandra Catherine Cooper
                                  1911 Grayson Highway, Suite 8-130
                                Grayson, Georgia 30017
             Company Contact:   Walter D. Hargrove
                                  3525 Piedmont Road NE, Suite 100
                                  Atlanta, Georgia 30305
                                  404-228-4921
                                  administrator@narsystems.com

      127.    Defendants sometimes run their debt collection and credit identity theft operation through employees that work from home, using home computers to remotely connect to defendants' computer servers, access consumers' information, place telephone calls to consumers using defendants' telephone services, and falsely threaten consumers with litigation and prosecution in efforts to coerce the payment of money, and process payments. Upon information and belief, the computer interface and related tech matters used by defendants and their employees and agents were created and implemented by non-party Brian Delayne Acker.

128.    In addition to the internet domains described above, defendants have registered

multiple domains through which defendants operated their credit identity theft and debt

collection scam, including:

a)    Global Financial Services
www.globalfinancialsvcs.com
Registered 07/20/2019 - GoDaddy
3631 Chamblee Tucker Road, Suite A-111 (UPS # 4223)
Atlanta, GA 30341
844-627-3563, 678-550-9148 (fax)
admin@globalfinancialsvcs.com

b)    Southwest Mediation Group
www.southwestmediationgroup.com
Registered 02/02/2020 - GoDaddy (Black Jockey Co.)
2483 Heritage Village, Suite 16-218 (UPS # 1063)
Snellville, GA 30078
833-781-8463, 844-881-3606
admin@southwestmediationgroup.com

c)    Global International Services
www.globalinternationalservices.net
Registered 01/14/2020 - GoDaddy
7209 East W.T. Harris Boulevard, Suite J-310 (UPS # 1089)
Charlotte, NC 28227
877-463-1332
admin@globalinternationalservices.net

d)    National Adjudication Services
www.nationaladjudicationservices.com
Registered 04/20/2020 - GoDaddy
4426 Hugh Howell Road, Suite B-160 (UPS # 1202)
Tucker, GA 30084
855-418-0795, 678-550-9148 (fax)
docs.nationaladjudication@clerk.com

129.    All defendants, along with other individuals, and through multiple entities and

their owners, officers, members, managers, employees and agents, have been and continue to be

engaged in a fraudulent and ongoing scheme to contact and falsely threaten consumers with

litigation, prosecution and other adverse consequences, in efforts to extort the payment of money

that is not owed and that defendants have no right to collect.

130.    Plaintiff is proceeding against defendants collectively under a common enterprise theory, under which "each entity within a set of interrelated companies may be held jointly and severally liable for the actions of other entities that are part of the group." *F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014). To determine whether a common enterprise, or a "maze of interrelated companies," exists, courts consider "the pattern and framework of the whole enterprise." *Delaware Watch Co. v. F.T.C.*, 332 F.2d 745, 746 (2d Cir. 1964). Although no one factor is controlling, relevant factors include whether the corporate defendants "(1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing." *Tax Club, Inc.*, 994 F. Supp. 2d at 469 (citation omitted); *F.T.C. v. Consumer Health Benefits Ass'n*, No. 10-CV-3551(ILG), 2011 WL 3652248, *5 (E.D.N.Y. Aug. 18, 2011). Further, a common enterprise analysis is neither an alter ego inquiry nor an issue of corporate veil piercing; instead, the entities within the enterprise may be separate and distinct corporations. *F.T.C. v Wyndham Worldwide Corp.*, No. 13-1887(ES), 2014 WL 2812049, *5 (D. N.J. June 23, 2014) (citing *F.T.C. v. Direct Benefits Grp.*, No. 11-1186, 2013 WL 3771322, *18 (M.D. Fla. July 18, 2013)).

131.    All defendants are intricately bound together and combine their efforts in a joint and common enterprise, using concerted efforts to collect debts allegedly owed by consumers throughout the United States. Defendants operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each defendant jointly and severally for the unlawful acts of each defendant.

132.    Defendants operate as a single entity, commonly owned, operated and managed,

44

operating from shared office space, sharing the same staff, equipment, supplies and telephonic services, and commingling revenue, expenses and payroll.

133.    All defendants, and other entities to be identified in discovery and named as additional defendants in this lawsuit, are intricately bound together and combine their efforts in a joint and common enterprise and use concerted attempts to acquire, collect, and re-sell stolen accounts related to debts allegedly owed by consumers throughout the United States. Defendants and the other entities operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each participant jointly and severally for the unlawful acts of each of the other participants.

134.    An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

135.    A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for

the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

**IV.    Facts**

136.    Plaintiff Mona Price used her account (No. 4835027213) with non-party Guaranty Bank, also known as Best Bank, also known as First Citizens Bank, to obtain money on credit and used that money to purchase goods and services for personal, family and household purposes.

137.    Guaranty Bank claimed that Ms. Price's account became delinquent and that Ms. Price owed $84.90 to Guaranty Bank.

138.    Ms. Price disputed and refused to pay the alleged debt.

139.    Guaranty Bank charged off the account and related, alleged debt.

140.    Guaranty Bank sold the account to non-party Absolute Resolutions Corporation.

141.    On or about December 19, 2017, Absolute Resolutions Corporation sold the account to non-party First Financial Investment Fund Holdings, LLC ("FFIFH"), also known as First Financial Asset Management, also known as First Portfolio Ventures, telephone number 800-542-8714.

142.    FFIFH states that at all times since December 19, 2017 through the date of filing of this lawsuit, FFIFH has remained the current owner of all right, title and interest in the account

46

and related, alleged debt.

143.    FFIFH states that it has never sold the account to, or placed the account for collection with, any of the defendant named in this complaint, or with any entity associated with them.

144.    FFIFH states that the defendants named in this complaint have stolen the account and Ms. Price's personal and financial information, or that the defendants named in this complaint have otherwise acquired the stolen account and Ms. Price's stolen personal and financial information.

145.    On December 6, 2018, employees and agents for an entity named Integrity Financial Solutions, LLC ("IFS") contacted Ms. Price by telephone, falsely stated that they were attorneys hired by Guaranty Bank to collect the alleged debt from Ms. Price, and falsely threatened Ms. Price with litigation, prosecution and other adverse consequences, unless Ms. Price paid money to IFS.

146.    On December 17, 2018, Ms. Price filed a lawsuit in the United States District Court for the Western District of Michigan, Case No. 1:18-cv-1395, against IFS and its operators, Jesse Abraham Jaimes and Samuel Herrera Bolanos, alleging that IFS, Mr. Jaimes and Mr. Bolanos violated the FDCPA, DPPA and Michigan law, in connection with their acquisition and use of Ms. Price's stolen account and stolen personal and financial information, to contact and attempt to extort the payment of money from Ms. Price.

147.    In February of 2019, Ms. Price entered into a settlement agreement with IFS, Mr. Jaimes and Mr. Bolanos, and the lawsuit was dismissed.

148.    Despite the foregoing, on September 26, 2019, employees and agents for entities

named JDI Financial, LLC and CT Financial, LLC (collectively, "JDI") contacted Ms. Price by telephone, falsely stated that they were attorneys hired by Guaranty Bank to collect the alleged debt from Ms. Price, and falsely threatened Ms. Price with litigation, prosecution and other adverse consequences, unless Ms. Price paid money to JDI.

149.     On November 5, 2019, Ms. Price filed a lawsuit in the United States District Court for the Western District of Michigan, Case No. 1:19-cv-929, against JDI and others, alleging that JDI and others violated the FDCPA, DPPA and Michigan law, in connection with their acquisition and use of Ms. Price's stolen personal and financial information and stolen account, to contact and attempt to extort the payment of money from Ms. Price.

150.     In July of 2020, Ms. Price entered into a settlement agreement with JDI, and the the lawsuit is scheduled to be dismissed no later than October 7, 2020.

151.     Despite the foregoing, criminals continue to sell and peddle Ms. Price's stolen personal and financial information and stolen account to scam artists around the country, for the purpose of contacting and attempting to extort the payment of money from Ms. Price.

152.     The defendants named in this lawsuit are the most current credit identity thieves and scam operators to obtain Ms. Price's stolen personal and financial information and stolen account, and use that information to contact and attempt to extort the payment of money from Ms. Price through false threats of prosecution, litigation and other adverse consequences.

153.     On August 10, 2020, defendants' female employee and agent, known as a "point caller," placed a call to Ms. Price's cellular telephone, and left the following scripted message on Ms. Price's voice mail: "Good afternoon. This is a message for a Mona M. Price. I'm calling in regards to a time sensitive matter that is attached to your name and Social [Security Number]

48

coming out of Cobb County. If you could give us a call back at 470-407-4029 that would be greatly appreciated. 470-407-4029. Have a nice day."

154.     On August 11, 2020, Ms. Price's husband made a return call to telephone number 470-407-4029, which was answered by defendants' employee and agent who identified herself as "Tony Davis" with "Refine Solutions." In the ensuing conversation, defendants' employee and agent made the following representations:

a)      Ms. Price's "Case Number" is 3024269.

b)      "Here at Refine Solutions we process and facilitate orders for our clients and right now on our desk it's looking like [Ms. Price] had a bank account with Best Bank and it was overdraft $84.90 when it closed and they're looking to pursue you over the balance. But, if you do choose to dispute this and take it to court, there will be an extra $800.00 added on to the $84.90 for court fees, fines, penalties, and things like that.

c)      "It looks like [the account] was opened in 2013 but the charge-off date looks like it was in 2016 and it just got to us."

d)      "I don't have the full account number. All we have is where it was from it says Best Bank which is now Guaranty Bank and then it shows when it was open because by the time it gets to us, like, because we're not collections, we're past collections, so like by the time it gets to us, like, other places have tried to contact or they claim that they've tried to send correspondence to [Ms. Price] before it got to us."

e)      "Our company is Refine Solutions. We're just a mediation company."

49

f)      "I work in mediation for the people who have purchased this debt. Like, it's gone through so many people without being resolved. And the company we work for, you know, paid them off, and then they come after the people that owed to get their money back. Really, plus more, if the person does end up going to court, unless like they have proof that it was like identity theft. Like police reports or you know things like that or maybe proof that they have paid it off and stuff like that but other than that you know and then if you don't show up to court they put a default judgment against you, you know, cause you weren't there. So they just think that you don't care and then they can get you for whatever full amount they're trying to get you for."

g)      "It looks like it was April 2, 2014, that was the day it looks like it was opened, but the charge-off date is the date that it was sent off from Best Bank to the other people, and that happened in 2016. It just got to us last week though."

h)      "We're not harassing you about paying it, we're just letting you know because we're processing stuff, giving you a chance to handle it before it ends up going to court, especially when it's something, you know, not even an extra-large balance."

i)      "It'll be more if she actually goes to court. This is just the straight up balance that was owed to the bank with nothing else added on to it you know but if you go to court you know they're going to try to get you for

money they had to spend to bring her to court and things like that too.

That's why it'd be more expensive than just paying the $84.90."

j)      "You have our 470-407-4029 number. My name is Tony Davis and my

extension is 410."

155.    On August 11, 2020, in response to defendants' false threats, and for the sole

purpose of identifying and suing the entities that had acquired Ms. Price's stolen personal and

financial information and used that information to contact and falsely threaten Ms. Price and her

family with litigation, prosecution and other adverse consequences, in efforts to extort the

payment of money from Ms. Price. According to the debit card's issuing bank, the payment was

deposited into a merchant account in the name of Global Management Acquisition Firm Inc, also

known as "Global Management," located in Georgia, telephone number 877-373-9176.

According to the debit card's issuing bank, the payment posted to defendants' account on August

12, 2020.

156.    Defendants' use of the merchant account to receive debit card and credit card

payments from consumers defrauded by defendants violates the terms of the agreement between

defendants and defendants' acquiring bank, and violates the terms of the agreements between

defendants and Visa and MasterCard. According to Visa, the acquiring bank through which

defendants' have obtained and maintained their merchant account is Synovus Bank, 1148

Broadway, Columbus, Georgia 31902.

157.    On August 11, 2020, defendants, using the name "Refine Solutions 1 Co," sent a

series of five emails from email@securecrm.io to Ms. Price. The emails purported to be from the

"Payment Verification Department." Attached to the emails were various documents, including

letters, putative "Payment Authorization" forms, and payment receipts. A copy of the emails and all accompanying documents are attached to this complaint as Exhibit B.

158.    The above-described threats and representations made by defendants and defendants' employees and agents were false and part of a scripted, unlawful and criminal debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats, intimidation, criminal extortion and unlawful harassment of the consumers, their relatives and other third parties.

159.    Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

160.    Defendants and their employees and agents falsely represented that Ms. Price owed money in connection with a stolen and counterfeit account.

161.    Defendants and their employees and agents falsely represented and inflated the amount of Ms. Price's alleged debt.

162.    Defendants and their employees and agents falsely represented that Ms. Price owed a debt that is not owed.

163.    Defendants and their employees and agents falsely represented the identity of the entity to whom the alleged debt is owed.

164.    Defendants and their employees and agents falsely represented that they are attorneys and a law firm.

165.    Defendants and their employees and agents wrongfully obtained and wrongfully used information related to a counterfeit account, as well as Ms. Price's personal and financial

information and personal information regarding Ms. Price's husband, in an effort to coerce the payment of money from Ms. Price.

166.    Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved, or would become involved, in the efforts to collect the alleged debt.

167.    Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Ms. Price to collect the alleged debt.

168.    Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Ms. Price to collect the alleged debt.

169.    Defendants and their employees and agents falsely represented and falsely implied that Ms. Price had committed fraud.

170.    Defendants and their employees and agents falsely represented and falsely implied that Ms. Price had committed a crime.

171.    Defendants and their employees and agents falsely represented and falsely implied that Ms. Price was going to be arrested and prosecuted unless Ms. Price paid money to defendants.

172.    Defendants and their employees and agents falsely represented and falsely implied that defendants are mediators.

173.    Defendants did not intend to file a lawsuit against Ms. Price in any court in efforts to collect the alleged debt.

174.    The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

175.    The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

176.    The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

177.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the debt collector is vouched for or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

178.    The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

179.    The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

180.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney. 15 U.S.C. § 1692e(3).

181.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

182.    The FDCPA states that it is unlawful for a debt collector to threaten to take any

54

action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

183.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

184.    The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

185.    The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

186.    The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

187.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

188.    The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

189.    The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

190.    The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by

law.  15 U.S.C. § 1692f(1).

191.     Defendants and their employees and agents have violated the FDCPA, 15 U.S.C.

§§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (7), (8), (10), (11), (13)

and (14), and 1692f and 169f(1).

192.     The FDCPA states that a debt collector may not communicate, in connection with

the collection of a debt, with any person other than the consumer, except to acquire "location

information" about the consumer.  15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

193.     The FDCPA defines "location information" to mean "a consumer's place of abode

and his telephone number at such place, or his place of employment."  15 U.S.C. § 1692a(7).

194.     The FDCPA requires that, within five days of the initial communication with a

consumer in connection with the collection of any debt, a debt collector shall, unless the required

information is contained in the initial communication or the consumer has paid the debt, send the

consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

195.     Defendants and their employees and agents failed to timely send to Ms. Price

a notice containing the information required by 15 U.S.C. § 1692g(a).

196.     Each defendant and each defendant's employees, managers, owners, agents,

affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful

debt collection practices that are described in this complaint.

197.     Defendants and their employees, managers, owners, agents, affiliates and co-

conspirators each have intentionally and wilfully violated the FDCPA.

198.     The FDCPA states in part, "It is the purpose of this subchapter to eliminate

abusive debt collection practices by debt collectors" and "to insure that those debt collectors who

refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

199.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

200.    In connection with efforts to collect an alleged debt from Ms. Price, defendants obtained and used personal information regarding Ms. Price from an internet skip-tracing database, such as LexisNexis Risk Management, Inc. (Accurint), TransUnion Risk and Alternative Data Solutions, Inc. (TLO), UDT Group, LLC (Delvepointe), or Interactive Data, LLC.

201.    The database used by defendants was derived in part from non-public motor vehicle records and searches made with the database are subject to the terms of the Drivers Privacy Protection Act. Subscribers to the database must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber logs on to use the database, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.

202.    The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

203. The DPPA states:

(a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.

(b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722.

204. The DPPA also states:

"personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

205. The DPPA also states:

A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

206. The DPPA enumerates the only "permissible uses" for which personal information may be obtained.   18 U.S.C. § 2721(b).

207. Defendants did not have a "permissible use" under the DPPA to obtain, disclose or use personal information regarding Ms. Price or her relatives.

208. Defendants used the database to obtain, disclose and use personal information regarding Ms. Price and her relatives.

209. Defendants made a false representation to the provider of the database to obtain personal information regarding Ms. Price and her relatives derived from motor vehicle records.

58

210.    Alternatively, the entity that obtained Ms. Price's and her relatives' personal information from the database and disclosed the personal information to defendants, made a false representation to the provider of the database to obtain personal information regarding Ms. Price and her relatives that was derived from motor vehicle records.

211.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

212.    Defendants knowingly obtained, disclosed and used Ms. Price's and her relatives' personal information, derived from motor vehicle records, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

213.    No defendant had a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Ms. Price's and her relatives' personal information obtained from the database.

214.    No defendant had Ms. Price's or her relatives' consent, permission, authorization or waiver to obtain Ms. Price's and her relatives' personal information from the database.

215.    A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

216.    The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

217.    Defendants intentionally and wilfully violated the DPPA.

218.    Each defendant was aware, or should have been aware, of the unlawful debt collection practices being used by the other defendants to collect alleged debts.

219.    As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established at trial.

## V.    Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

220.    Plaintiff incorporates the foregoing paragraphs by reference.

221.    Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)    Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)    Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)    Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)    Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

222.     Plaintiff incorporates the foregoing paragraphs by reference.

223.     Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)      Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b)      Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c)      Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d)      An injunction prohibiting defendants from further obtaining or using plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)      An order requiring defendants to provide plaintiff with the original and all copies of any and all documents of any kind that contain any of plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4); and

f)      An injunction prohibiting defendants from disseminating plaintiff's personal information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

### Count 3 – Michigan Regulation of Collection Practices Act

224.     Plaintiff incorporates the foregoing paragraphs by reference.

225.     Each defendant has violated the MRCPA.  Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading,

untrue, or deceptive statement or claim in a communication to collect a debt;

b)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

c)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 445.257(2);

b)      Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)      Statutory damages pursuant to M.C.L. § 445.257(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 4 – Michigan Occupational Code

226.      Plaintiff incorporates the foregoing paragraphs by reference.

227.      Each defendant has violated the MOC. Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt; and

c)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

Dated: September 3, 2020                    /s/ Phillip C. Rogers
                                            Phillip C. Rogers (P34356)
                                            Attorney for Plaintiff
                                            6140 28th Street SE, Suite 115
                                            Grand Rapids, Michigan 49546-6938
                                            (616) 776-1176
                                            ConsumerLawyer@aol.com