UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONA PRICE,

    Plaintiff,                                       Case No. 1:20-cv-862

v.                                                     HON. ROBERT J. JONKER

SPECIALIZED SOLUTION SERVICES, LLC, et al.,

    Defendants.
_____/

## **Introduction**

This is an action for damages brought by a consumer against multiple debt collectors for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721 *et seq.*, Michigan Regulation of Collection Practices Act ("MRCPA"), M.C.L. § 445.251 *et seq.*, and Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq*.

On October 15, 2020, Defendants filed a motion to dismiss this action pursuant to the Federal Rules of Civil Procedure, Rule 12(b)(6), arguing that Plaintiff has failed to state a claim upon which relief can be granted. The motion should be denied.

## **Motion Standard**

> Under the notice pleading requirements, a complaint must contain a short and plain statement of the claim showing how the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *see Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Naked assertions without further factual enhancement, formulaic recitations of the elements of a cause of action, and mere labels and conclusions will be insufficient for a pleading to state a plausible claim. *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 355 (6th Cir. 2014) (citations omitted).

> A defendant bringing a motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether a cognizable claim has been pled in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). To survive a motion to dismiss, a plaintiff must allege facts sufficient to state a claim for relief that is "plausible on its face" and, when accepted as true, are sufficient to "raise a right to relief above the speculative level." *Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017) (citations omitted). "The complaint must 'contain either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.'" *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015) (citation omitted). When considering a motion to dismiss, a court must accept as true all factual allegations, but need not accept any legal conclusions. *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011).

Opinion and Order at 2, *Nagle v. Kapital Mediation Grp, LLC*, No. 1:18-cv-199, ECF No. 30, PageID.220 (W.D. Mich. June 7, 2019) (attached as Exhibit A).

## **Discussion**

Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) can be summarized in two sentences. First, the defendants argue that the plaintiff's complaint contains too much information, which the defendants do not believe is relevant to the plaintiff's claims. Second, the defendants argue that the plaintiff's complaint fails to provide an itemized list specifying which individual defendant took each individual action. Defendants provide no legal support for their motion to dismiss this case for either of these reasons, and this Court should deny their motion.

Discovery has not commenced in this lawsuit to allow for the plaintiff to provide evidentiary-level factual showings. *See Harbourt v. PPE Casino Resorts Maryland, LLC*, 820 F.3d 655, 658 (4th Cir. 2016) (pleading need not "forecast" evidence); *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788-89 (3d Cir. 2016) (pleading need not show a prima facie case, since that sets the evidentiary (not pleading) obligation).

This lawsuit is in its infancy. Defendants have not yet filed an answer. For purposes of a motion to dismiss under Rule 12(b)(6), and as demonstrated below, the complaint contains

sufficient allegations of fact to establish that the defendants violated the FDCPA, DPPA, MRCPA, and MOC.

    A. **Plaintiff's Complaint Sufficiently Alleges that the Defendants have Violated the FDCPA.**

        1.       **Principles of Construction of the FDCPA.**

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577, 130 S.Ct. 1605, 1608, 176 L.Ed.2d 519 (2010) (citing 15 U.S.C. § 1692(e)). The FDCPA is a remedial statute and should be liberally construed. *See Frey v. Gangwish II*, 970 F.2d 1516, 1521 (6th Cir. 1992) ("The [FDCPA] is an extraordinarily broad statute . . . . We must enforce this statute as Congress has written it.").

The FDCPA is a "strict liability statute, meaning that a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages." *Fed. Home Laon Mortg. Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2007) (citing 15 U.S.C. § 1692k(a)). "Strict liability places the risk of penalties on the debt collector that engages in activities which are not entirely lawful, rather than exposing the consumers to unlawful debt-collector behavior without a possibility for relief." *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 449 (6th Cir. 2014). A single violation of any provision of the FDCPA is sufficient to establish liability. 15 U.S.C. § 1692k; *Taylor v. Perrin, Landry, DeLaunay & Durrand*, 103 F.3d 1232, 1238 (5th Cir. 1997). The focus of the FDCPA is on the conduct of the debt collector, not on the conduct of the consumer or the validity of the alleged debt. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).

## 2. There are Four Elements to Plaintiff's FDCPA claims.

In order to establish a claim under the FDCPA, (a) the plaintiff must be a "consumer," (b) the "debt" must have arisen out of a transaction which was "primarily for personal, family or household purposes;" (c) the defendant must be a "debt collector;" and (d) the defendant must have engaged in conduct that violated the act. *See*, *e.g.*, *Wallace v. Wash. Mutual Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012).

### a. The complaint sufficiently alleges that Plaintiff is a "consumer" as defined by the FDCPA.

The term "consumer" means "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). The complaint alleges that Ms. Price is a "consumer" because she is a natural person who allegedly obtained a loan and became obligated to pay a debt. Compl., ECF No. 1, PageID.5, 46, ¶¶ 12, 136-137.

### b. The complaint sufficiently alleges that Plaintiff incurred a "debt" as defined by the FDCPA.

The term "debt" means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The complaint alleges that the money borrowed by Ms. Price resulted in a "debt" because Ms. Price used the money to purchase goods or services for personal, family and household purposes. Compl., ECF No. 1, PageID.46, ¶ 136.

### c. The complaint sufficiently alleges that the defendants are "debt collectors" as defined by the FDCPA.

The term "debt collector" means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any

4

debts or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The complaint specifically alleges that each and every defendant:

> "uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts[,]""regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another[,]" and "is a 'debt collector' as the term is defined and used in the FDCPA." Compl., ECF No. 1, PageID.6, 7, 9, 10, 13, 15, 16-17, 18, 19, 20, 21, 26, 28, 29, 30, 31-32, 33, 35, 37, 38-39, ¶¶ 13, 15, 17, 20, 23, 27, 34, 42, 47, 50, 53, 58, 61, 66, 79, 84, 88, 92, 96, 102, 107, 113, 117; and
>
> "directly and indirectly participated in the efforts to collect an alleged debt from plaintiff that are described in this complaint." Compl., ECF No. 1, PageID.6, 7, 8, 10, 11, 15, 16, 17, 17-18, 19, 20-21, 26, 27, 29, 30, 31, 33, 35, 37, 38, 39, ¶¶ 14, 16, 18, 22, 26, 29, 41, 46, 49, 52, 57, 60, 64, 78, 83, 87, 91, 95, 101, 106, 112, 116, 120.

The complaint refers to defendants Specialized Solution Services, LLC; Owen & James, Co.; and A Jefferson Association LLC; collectively, as the "Call Center Defendants." The complaint also alleges that defendants Dion Tremayne Jefferson, Amber Jenica Jefferson, Ennis Laverne Jefferson:

> (a) created the collection policies and procedures used by the Call Center Defendants, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Call Center Defendants, (c) oversaw the application of the collection policies and procedures used by the Call Center Defendants, and their employees and agents, (d) drafted, created, approved and ratified the tactics, scripts and letters used by the Call Center Defendants, and their employees and agents to collect debts from consumers, including the tactics, scripts and letter that were used to attempt to collect an alleged debt from plaintiff as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by all defendants, and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by all defendants, and their employees and agents in attempts to collet an alleged debt from plaintiff as stated in this complaint.

Compl., ECF No. 1, PageID.8, 9-10, 10-11, ¶¶ 21, 25, 28.

The complaint further alleges that defendants Lamont Darnell Cooper, Cassandra Catherine Cooper, Jada Rashawn Cooper, Benny H. Hardy Jr., Walter D. Hargrove, Lamar D. Snow, Demetrious Eugene Thompson, Jahaan Abdul McDuffie, Donald Anthony Smiley, Rannya Cobb:

> (a) created the collection policies and procedures used by all defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of all defendants and their employees and agents, (c) oversaw the application of the collection policies and procedures used by all defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by all defendants and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by all defendants and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by all defendants and their employees and agents in attempts to collect an alleged debt from plaintiff as alleged in this complaint.

Compl., ECF No. 1, PageID. 25-26, 27, 28-29, 29-30, 31, 32-33, 34-35, 36-37, 37-38, 39 ¶¶ 76, 81, 85, 89, 93, 99, 104, 110, 114, 118.

The complaint contains sufficient allegations of fact to establish that the defendants have each used instruments of interstate commerce and the mails in a business the principal purpose of which is the collection of any debts, as well as have regularly collected or attempted to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. The complaint sufficiently alleges that the defendants are each a "debt collector" as defined by the FDCPA.

### d. The complaint sufficiently alleges that the defendants engaged in conduct that violated the FDCPA.

The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f. The FDCPA expressly states that "[a] debt collector may not use any false, deceptive, or misleading representation or means

6

in connection with the collection of any debt." 15 U.S.C. § 1692e. "The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).

Non-party First Financial Investment Fund Holdings, LLC ("FFIFH") "states that at all times since December 19, 2017 through the date of filing of this lawsuit, FFIFH has remained the current owner of all right, title and interest in the account and related, alleged debt." Compl., ECF No. 1, PageID.46-47, ¶ 142. "FFIFH states that it has never sold the account to, or placed the account for collection with, any of the defendant[s] named in this complaint, or with any entity associated with them." Compl., ECF No. 1, PageID.47, ¶ 143.

Ms. Price is a victim of identity theft. The defendants named in this lawsuit are the most current credit identity thieves and scam operators to obtain Ms. Price's stolen personal and financial information and stolen account, and use that information to contact and attempt to extort the payment of money from Ms. Price through false threats of prosecution, litigation and other adverse consequences. Compl., ECF No. 1, PageID.48, ¶ 152.

The complaint sufficiently describes in detail how the defendants participated in a scheme whereby,

> [a]ll defendants are intricately bound together and combine their efforts in a joint and common enterprise, using concerted efforts to collect debts allegedly owed by consumers throughout the United States. Defendants operate collectively and together, in such a way that they are collecting debts for the benefit of each other, and making each defendant jointly and severally for the unlawful acts of each defendant. Compl., ECF No. 1, PageID.44, ¶ 131.
>
> Defendants operate as a single entity, commonly owned, operated and managed, operating from shared office space, sharing the same staff, equipment, supplies and telephonic services, and commingling revenue, expenses and payroll. Compl., ECF No. 1, PageID.44-45, ¶ 132.
>
> All defendants, and other entities to be identified in discovery and named as additional defendants in this lawsuit, are intricately bound together and combine

their efforts in a joint and common enterprise and use concerted attempts to acquire, collect, and re-sell stolen accounts related to debts allegedly owed by consumers throughout the United States. Defendants and the other entities operate collectively and together, in such a way that they are collecting debts for the benefit of each other, and making each participant jointly and severally for the unlawful acts of each of the other participants. Compl., ECF No. 1, PageID.45, ¶ 133.

An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See*, *e.g.*, *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 404-06 (3d Cir. 2000); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016); *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996). Compl., ECF No. 1, PageID.45, ¶ 134.

A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of the accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). *See Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 435-38 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC*, 847 F.Supp.2d 994, 1004-06 (W.D. Mich. 2012). Compl., ECF No. 1, PageID.45-46, ¶ 135.

On August 10, 2020, defendants' female employee and agent, known as a "point caller," placed a call to Ms. Price's cellular telephone, and left the following scripted message on Ms. Price's voice mail: "Good afternoon. This is a message for a Mona M. Price. I'm calling in regards to a time sensitive matter that is attached to your name and Social [Security Number] coming out of Cobb County. If you could give us a call back at 470-407-4029 that would be greatly appreciated. 470-407-4029. Have a nice day. Compl., ECF No. 1, PageID.48-49, ¶ 153.

On August, 11, 2020, Ms. Price's husband made a return call to telephone number 470-407-4029, which was answered by defendants' employee and agent who identified herself as "Tony Davis" with "Refine Solutions." In the ensuing conversation, defendants' employee and agent made the following representations:

a) Ms. Price's "Case Number" is 3024269.

b) "Here at Refine Solutions we process and facilitate orders for our clients and right now on our desk it's looking like [Ms. Price] had a bank account with Best Bank and it was overdraft $84.90 when it closed and they're looking to pursue you over the balance. But, if you do choose to dispute this and take it to court, there will be an extra $800.00 added on to the $84.90 for court fees, fines, penalties, and things like that.
c) "It looks like [the account] was opened in 2013 but the charge-off date looks like it was in 2016 and it just got to us."
d) "I don't have the full account number. All we have is where it was from it says Best Bank which is now Guaranty Bank and then it shows when it was open because by the time it gets to us, like, because we're not collections, we're past collections, so like by the time it gets to us, like, other places have tried to contact or they claim that they've tried to send correspondence to [Ms. Price] before it got to us."
e) "Our company is Refine Solutions. We're just a mediation company."
f) "I work in mediation for the people who have purchased this dent. Like, it's gone through so many people without being resolved. And the company we work for, you know, paid them off, and then they come after the people that owed to get their money back. Really, plus more, if the person does end up going to court, unless like they have proof that it was like identity theft. Like police reports or you know things like that or maybe proof that they have paid it off and stuff like that but other than that you know and then if you don't show up to court they put a default judgment against you, you know, cause you weren't there. So they just think that you don't care and then they can get you for whatever full amount they're trying to get you for."
g) "It looks like it was April 2, 2014, that was the day it looks like it was opened, but the charge-off date is the date that it was sent off from Best Bank to the other people, and that happened in 2016. It just got to us last week though."
h) "We're not harassing you about paying it, we're just letting you know because we're processing stuff, giving you a chance to handle it before it ends up going to court, especially when it's something, you know, not even an extra-large balance."
i) "It'll be more if she actually goes to court. This is just the straight up balance that was owed to the bank with nothing else added on to it you know but if you go to court you know they're going to try to get you for money they had to spend to bring her to court and things like that too. That's why it'd be more expensive than just paying the $84.90."
j) "You have our 470-407-4029 number. My name is Tony Davis and my extension is 410."

Compl., ECF No. 1, PageID.49-51, ¶ 154.

On August 11, 2020, in response to defendants' false threats, and for the sole purpose of identifying and suing the entities that had acquired Ms. Price's stolen

9

personal and financial information and used that information to contact and falsely threaten Ms. Price and her family with litigation, prosecution and other adverse consequences, in efforts to extort the payment of money from Ms. Price, [a payment was made to defendants via debit card.] According to the debit card's issuing bank, the payment was deposited into a merchant account in the name of Global Management Acquisition Firm Inc, also known as "Global Management," located in Georgia, telephone number 877-373-9176. According to the debit card's issuing bank, the payment posted to defendants' account on August 12, 2020. Compl., ECF No. 1, PageID.51, ¶ 155.

On August 11, 2020, defendants, using the name "Refine Solutions 1 Co," sent a series of five emails from [email@securecrm.io](mailto:email@securecrm.io) to Ms. Price. The emails purported to be from the "Payment Verification Department." Attached to the emails were various documents, including letters, putative "Payment Authorization" forms, and payment receipts. Compl., ECF No. 1, PageID.51-52, ¶ 157.

Defendants, and their employees and agents own, control and use a Merchant Account established in the name of "Global Management," telephone number 877-373-9176, located in Georgia, to receive credit card and debit card payments that they extort from their victims. Money deposited in the Merchant Account is shared among and distributed to the defendants named in this lawsuit, their employees and agents, and perhaps others. Compl., ECF No. 1, PageID.14, ¶38.

Further, Defendants and their employees and agents:

failed to meaningfully identify themselves and their companies; falsely represented that Ms. Price owed money in connection with a stolen and counterfeit account; falsely represented and inflated the amount of Ms. Price's alleged debt; falsely represented that Ms. Price owed a debt that is now owed; falsely represented the identity of the entity to whom the alleged debt is owed; falsely represented that they are attorneys and a law firm; wrongfully obtained and wrongfully used information related to a counterfeit account, as well as Ms. Price's personal and financial information and personal information regarding Ms. Price's husband, in an effort to coerce the payment of money from Ms. Price; falsely represented and falsely implied that lawyers were involved, or would become involved, in the efforts to collect the alleged debt; falsely represented and falsely implied that a lawsuit was going to be filed against Ms. Price to collect the alleged debt; falsely represented and falsely implied that a lawsuit already had been filed against Ms. Price to collect the alleged debt; falsely represented and falsely implied that Ms. Price had committed fraud; falsely represented and falsely implied that Ms. Price had committed a crime; falsely represented and falsely implied that Ms. Price was going to be arrested and prosecuted unless Ms. Price paid money to defendants; falsely represented and falsely implied that defendants were mediators; did not intend to file a lawsuit against Ms. Price in any court in efforts to collect the alleged debt; and failed to timely send to Ms. Price a notice containing the information required by 15 U.S.C. § 1692g(a).

Compl., ECF No. 1, PageID.52-53, 56, ¶¶ 159-173, 195.

Taking the preceding allegations as true, "[d]efendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (7), (8), (10), (11), (13) and (14), and 1692f and 169[2]f(1)[,]" and "1692g(a)." Compl., ECF No. 1, PageID.56, ¶¶ 191, 195.

Finally, the complaint alleges that "[e]ach defendant and each defendant's employees, managers, owners, agents, affiliates and co=conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in th[e] complaint." Compl., ECF No. 1, PageID.56, ¶ 196. Thus, "[d]efendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and willfully violated the FDCPA." Compl., ECF No. 1, PageID.56, ¶ 197.

The complaint sufficiently alleges that the defendants attempted to collect money from Ms. Price that Ms. Price did not owe, and in an amount that was not expressly authorized by an agreement creating the alleged debt or permitted by law, and that the defendants violated the FDCPA.

**B. Plaintiff's Complaint Sufficiently Alleges that the Defendants have Violated the DPPA, MRCPA, and MOC.**

In addition to her FDCPA claims, Plaintiff Mona Price has also asserted claims under the DPPA, MRCPA, MOC. These claims were not the subject of either of Defendants' motions to dismiss. Indeed, defendants did not even mention these other claims.[1] Regardless, Plaintiff's claims are well-founded and should remain.

---

[1] "Although Defendants' motion purports to request summary judgment on all Plaintiff's claims, it does not include any argument as to [an additional claim brought by Plaintiff]. Accordingly,

11

1. **Plaintiff's Complaint States a Claim Against the Defendants Under the DPPA.**

The Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq.*, was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143-44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

"A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court." 18 U.S.C. § 2724(a). "'[P]ersonal information' means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . ." 18 U.S.C. § 2725(3).

The DPPA enumerates the only "permissible uses" for which personal information may be obtained. 18 U.S.C. § 2721(b).

Defendants Global Management Acquisition Firm Inc (Georgia), Global Management Acquisition Firm, Inc (North Carolina), Black Jockey Company, Service Gurus Co., Fairview Mediation Group Inc, Hardy & Associates Inc., Hood & Thompson Associates Inc, are collectively referred to as the "Corporate Defendants." Compl., ECF No. 1, PageID.21, ¶ 65.

Defendants Lamont Darnell Cooper Jr., Cassandra Catherine Cooper, Jada Rashawn Cooper, Benny H. Hardy Jr., Walter D. Hargrove, Lamar D. Snow, Demetrious Eugene Thompson, Jahaan Abdul McDuffie, Donald Anthony Smiley, Rannya Cobb, are owners, officers, members, managers, employees, and agents of the Corporate Defendants. Compl., ECF

---

this claim will remain." *Keasey v. Judgment Enforcement Law Firm, PLLC*, No. 1:13-cv-420, 2014 WL 1744268, at *1 n.2 (W.D. Mich. Apr. 30, 2014).

No. 1, PageID.21, 26, 27-28, 29, 30, 31, 33, 35, 37, 38, ¶¶ 66, 79, 84, 88, 92, 96, 102, 107, 113, 117.

Defendants Lamont Darnell Cooper Jr., Cassandra Cather Cooper, Jada Rashawn Cooper, Benny H. Hardy Jr., Walter D. Hargrove, Lamar D. Snow, Demetrious Eugene Thompson, Donald Anthony Smiley, Rannya Cobb, "directly and indirectly participated in the unlawful acquisition, use, and sale of plaintiff's stolen, private, personal, financial and account information, as described in th[e] complaint." Compl., ECF No. 1, PageID.26, 27, 29, 30, 31, 33, 35, 37, 38, 39, ¶¶ 77, 82, 86, 90, 94, 100, 105, 111, 115, 119.

The Corporate Defendants "through [their] employees and agents, directly and indirectly participated in the unlawful acquisition, use, and sale of plaintiff's stolen, private, personal, financial and account information, as described in th[e] complaint." Compl., ECF No. 1, PageID.14-15, 16, 17, 19, 20, ¶¶ 40, 45, 48, 51, 56, 59, 63.

"FFIFH states that the defendants named in this complaint have stolen the account and Ms. Price's personal and financial information, or that the defendants named in this complaint have otherwise acquired the stolen account and Ms. Price's stolen personal and financial information." Compl., ECF No. 1, PageID.47, ¶ 144.

"In connection with efforts to collect an alleged debt from Ms. Price, defendants obtained and used personal information regarding Ms. Price from an internet skip-tracing database, such as LexisNexis Risk Management, Inc. (Accurint), TransUnion Risk and Alternative Data Solutions, Inc. (TLO), UDT Group, LLC (Delvepointe), or Interactive Data, LLC." Compl., ECF No. 1, PageID.57, ¶ 200.

> The database used by defendants was derived in part from non-public motor vehicle records and searches made with the database are subject to the terms of the Drivers Privacy Protection Act. Subscribers to the database must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber

logs on to use the database, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.

Compl., ECF No. 1, PageID.57, ¶ 201.

"The DPPA enumerates the only 'permissible uses' for which personal information may be obtained. 18 U.S.C. ¶ 2721(b)." Compl., ECF No. 1, PageID.58, ¶ 206. "Defendants did not have a 'permissible use' under the DPPA to obtain, disclose or use personal information regarding Ms. Price or her relatives." Compl., ECF No. 1, PageID.58, ¶ 207. Yet, "[d]efendants used the database to obtain, disclose and use personal information regarding Ms. Price and her relatives." Compl., ECF No. 1, PageID.58, ¶ 208. In doing so, "[d]efendants made a false representation to the provider of the database to obtain personal information regarding Ms. Price and her relatives derived from motor vehicle records." Compl., ECF No. 1, PageID.58, ¶ 209. "Alternatively, the entity that obtained Ms. Price's and her relatives' personal information from the database and disclosed the personal information to defendants, made a false representation to the provider of the database to obtain personal information regarding Ms. Price and her relatives that was derived from motor vehicle records." Compl., ECF No. 1, PageID.59, ¶ 210. As a result, "[d]efendants knowingly obtained, disclosed and used Ms. Price's and her relatives' personal information, derived from motor vehicle records, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law." Compl., ECF No. 1, PageID.59, ¶ 212. "No defendant had a 'permissible use' as the phrase is defined in the DPPA to obtain, use or disclose Ms. Price's and her relatives' personal information obtained from the database." Compl., ECF No. 1, PageID.59, ¶ 213. Further, "[n]o defendant had Ms. Price's or her relatives' consent, permission, authorization or waiver to obtain Ms. Prices' and her relatives' personal information from the database." Compl., ECF No. 1, PageID.59, ¶ 214. Since "[t]he DPPA imposes vicarious

liability on principals for the actions of their agents who act with apparent authority. *Margan v. Niles*, 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003)[,]" Compl., ECF No. 1, PageID.59, ¶ 216, the plaintiff's complaint sufficiently alleges that all "[d]efendants intentionally and willfully violated the DPPA." Compl., ECF No. 1, PageID.59, ¶ 217.

### 2. Plaintiff's Complaint States a Claim Against the Defendants Under the MRCPA and MOC.

Plaintiff's claims against the defendants under the Michigan Regulation of Collection Practices Act ("MRCPA"), M.C.L. § 445.251 *et seq.*, and Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq.*, will succeed or fail along with the FDCPA claims that they mirror.[2] For the same reasons that Plaintiff has stated a claim against the defendants under the FDCPA, Plaintiff has stated a claim against the defendants under the MRCPA and MOC.

### C. Defendants' Motion to Dismiss Should be Denied Because Defendants Have Not Met Their Burden to Show How Plaintiff's Complaint Fails to State a Claim.

"The defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *Raymond v. Avectus Healthcare Solutions, LLC*, 859 F.3d 381, 383 (6th Cir. 2017). Defendants' brief cited to *Twombly* and *Iqbal* for the purpose of demonstrating a minimum pleading standard, and that was it. The defendants did not cite to the FDCPA statute. The defendants did not even mention the plaintiff's claims under the DPPA, MRCPA, and MOC. The defendants did not cite to a single legal authority interpreting the FDCPA, the DPPA, the MRCPA, or the MOC, for their arguments. The defendants' motion should be denied for their

---

[2] The MRCPA prohibits misrepresentations and misleading communications by a "regulated person" in connection with the collection of a debt or a claim. Mich. Comp. Laws § 445.252. The MRCPA creates a private right of action, permitting recovery of damages or equitable relief. Mich. Comp. Laws § 445.257. The complaint makes clear that the plaintiff's MRCPA claims largely overlap with her FDCPA claims. The Court should find that plaintiff's complaint states an MRCPA claim for the same reason it will find that she states an FDCPA claim. *See Gamby v. Equifax Information Servs. LLC*, 462 F. App'x 442, 556 n.5 (6th Cir. 2012).

15

failure to provide any legal support for the Court to consider. Nor should the Court consider any new arguments the defendants will no doubt cast in their reply brief.

> "[T]his court will not consider arguments that are raised for the first time in a reply brief." *Appalachian Railcar Servs., Inc. v. Boatright Enters., Inc.*, 602 F.Supp.2d 829, n. 24, 2008 WL 828112, *37 n. 24 (W.D. Mich. 2008) (Maloney, J.) (citing, *inter alia*, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("We have found issues to be waived when they are raised for the first time in . . . replies to responses.")); *accord Am. Traffic Solutions., Inc. v. Redflex Traffic Sys., Inc.*, 2009 WL 775104, *1 (D. Ariz. Mar. 20, 2009) ("The remedy for dealing with new evidence first appearing in a reply is that we will not consider issues or evidence raised for the first time in a reply.") (citing *Gadda v. State Bar of Calif.*, 511 F.3d 933, 937 n. 2 (9th Cir. 2007)).
>
> This rule is logical, just, and efficient. For one thing, raising a new argument, defense, or evidence in a reply brief affords the other side no opportunity to respond. *ABC Beverage Corp. v. US*, 577 F.Supp.2d 935, 950 n.16 (W.D. Mich. 2008) (Maloney, J.) (citing, *inter alia*, *NLRB v. Int'l Health Care, Inc.*, 898 F.2d 501, 506 n.5 (6th Cir. 1990)). As this court has explained,
>
> "The opposing party should not have to incur the cost and effort of additional filings—a motion for leave to file a sur-reply, and the sur-reply itself—because the movants deliberately, or more likely inadvertently, held back part of their case. Nor should the court have to schedule oral argument when it would not have otherwise done so, merely to afford the opposing party a fuller opportunity to address the belated argument."
>
> *Guitierrez v. 78th Judicial District Court*, 2009 WL 1507415, *1 n.2 (W.D. Mich. May 29, 2009) (Maloney, C.J.). Barring extraordinary circumstances, both the opposing party and the court are entitled to rely on the movant's opening brief as a conclusive statement of its position on the claims targeted by the motion. Both efficiency, and fairness to one's adversary, militate in favor of requiring the movant's opening brief to identify with certainty *all* the arguments and evidence which the movant believes supports his position.

*International-Matex Tank Terminals-Illinois v. Chemical Bank*, No. 1:08-cv-1200, 2009 WL 1651291, *2 (W.D. Mich. June 11, 2009).

## **Conclusion**

Plaintiff respectfully requests that the Court deny the defendants' motion to dismiss.

Dated: November 5, 2020

/s/ Kevin J. Rogers
Kevin J. Rogers (P81303)
Phillip C. Rogers (P34356)
Attorneys for Plaintiff
6140 28th Street S.E., Suite 115
Grand Rapids, Michigan 49546
(616) 776-1176
RogersAttorney@gmail.com
ConsumerLawyer@aol.com